WIGHT FIRE-PROOFING Co. *v.* CHICAGO FIRE-PROOF Co. *et al.*

(*Circuit Court, N. D. Illinois.*   June 30, 1888.)

1. PATENTS FOR INVENTIONS—ANTICIPATION—FIRE-PROOF COLUMNS.
    Patent No. 154,852, issued September 8, 1874, to William H. Drake and Peter B. Wight, for fire-proof columns, consisted of an iron pillar with radial webs of iron issuing from it, the spaces between being filled with closely fitting gores of wood or other suitable material, extending beyond the webs, the outer line of the gore having such shape as was necessary to give the column the exterior form desired, the spaces between the gores to be filled with concrete or other fire-proof material.   The inventor generally substituted fire-clay bricks, suitably moulded, for the wooden gores, filling the interstices with plastic fire-clay.   An English patent to one Hogg, in 1873, was for a plan for fire-proofing columns and other portions of buildings by surrounding them with fire-clay or other fire-proof material, filling the interstices with plastic fire-clay or something analogous, this being adapted to a column made in any shape.   The object of both inventors was to exclude heat from the iron, and that of Drake and Wight was also to prevent water used in case of fire from coming in contact with the columns and injuring them.   *Held,* that the Hogg invention anticipated that of Drake and Wight.

2. SAME—INFRINGEMENT.
    Letters patent Nos. 191,662, June 5, 1877, and 191,887, January 29, 1878, were for improvements in said fire-proof columns.   The improvement in the first named, consisted in "buttons" screwing to the webs projecting so as to hold the gores to their places, the recess between the ends of the webs and the gores being dovetailed in shape to hold the concrete or other fire-proof material, discarding the batten used in the first patent to hold the gores.   In the second patent, a flange was cast on the ends of projecting wings to the columns, the gores thus being held in place, having the same beveled or dovetailed recess as before, and to be filled with like material, the gores being grooved.   Defendants' column, having no dovetailed recess between the gores and ends of the webs, nor the grooved gore, does not infringe either patent.

In Equity.   Bill for injunction against infringement of patents.
*G. L. Chapin,* for complainant.
*E. S. Chesbrough,* for defendants.

BLODGETT, J. The bill in this case charges infringement by defendants of the following patents, viz.: Patent No. 154,852, granted September 8, 1874, to William H. Drake and Peter B. Wight, for an "improvement in fire-proof columns;" patent No. 191,662, granted June 5, 1877, to William H. Drake and Peter B. Wight, for an "improvement in fire-proof columns;" patent No. 191,887, granted January 29, 1878, to Peter B. Wight, for an "improvement in fire-proof columns;" for which alleged infringements the complainant seeks an injunction and accounting.

In the first-mentioned patent the object of the invention is stated to be—

"To provide a column, post, or other architectural support for buildings, which shall have the combined advantages of wood and iron for withstanding fire and the effect of water upon heated iron. The nature of the invention is said in the specifications to consist of an iron pillar of suitable length and size to support, or partially support, such a part of an edifice or building as may be desired. The core, as shown, has a cruciform shape, but it may have any desired number of radial webs, between which are placed closely fitting gores of wood, which are held in place by iron battens, secured to the webs of the core by screws, as hereinafter described and shown. * * * These gores are made of wood or other suitable material, and to fit the webs closely, and to extend somewhat outwardly beyond them. * * * In this case the contour of a horizontal section is circular, the outer lines of the gores having the form of segments. They may, however, be made in a different form, as, for instance, their outer sides may be straight, making the column square, or they may be fluted or ornamented with any sort of plastic work."

And the utility of the device is stated in the specifications in the following paragraph:

"It is well known that iron columns heated in the burning buildings are very liable to buckle, but if such columns are not thus rendered inadequate to carry their respective loads, water (used to extinguish flames) coming in contact with them will cause their destruction, or otherwise impair their strength, when heated, so as to cause the building to give way. The wooden gores in our columns, although subjected to the heat of the burning building, will consume so slowly that the contents of the building will be burned before the iron cores receive any material damage."

It will be observed that the specifications require the cores to extend beyond the ends of the webs or wings of the column, and over this space, between the gores and the ends of the web, there was to be a batten, which was to be held by screws entering the end of the web. This space between the gores, the end of the web, and the batten, the specifications provide, may be filled with concrete, or any suitable non-heat-conducting material, to prevent the heat from communicating with the web.

Only the first claim of this patent is alleged to be infringed by the defendants, which is in the following words: "(1) The core, A, provided with radiating webs, B, in combination with the gores, C, as set forth."

The second patent, granted June 5, 1877, purports upon its face to be an improvement upon the patent of September, 1874, and consists mainly in what the patentees call "buttons," which are fastened to the ends of the webs of the iron cores by screws, or other suitable means; and these buttons project sufficiently beyond the ends of the web to form

an abutment or stop, against which a portion of the gore will be held, so as to confine the gores in the angles of the iron column. As in the first patent, the gores are to project or extend beyond the ends of the web, and leave a space to be filled with concrete, or some non-conducting substance, so as to shut off the heat from the ends of the webs; and the recess formed between the ends of the webs and the periphery of the gores is to be made dovetailed shape, so that such recess will retain the concrete, or other fire-proof material with which it is to be filled, without the aid of a batten. Infringement is charged as to the second claim of this patent, which is: "(2) The inclined-sided recess, J, in a composition column, for supporting the concrete, I, as specified."

The patent of January, 1878, shows the cruciform iron column with projecting wings, upon the ends of which wings is cast a projection or flange, so that the gores are held in place in the column by means of such flange; and provision is also made for filling the interstices between the gores and the web or flange with concrete or other non-conducting substances. This patent also shows the beveled recess of the 1877 patent filled with concrete, so as to protect the ends of the webs, and infringement is charged as to the first claim of this patent, which is: "(1) In a fire-proof column constructed as described, the protecting gores, B, provided with the groove, b, as and for the purpose set forth." The defenses interposed are: Want of novelty, and non-infringement.

I may as well say briefly at the outset that I think the defense of non-infringement of the 1877 and 1878 patent is well taken. The defendants' device shows no dovetailed recess between the gores and the end of the flange or web of the column, and hence does not, in my estimation, infringe either the second claim of the 1877 patent, or the first claim of the 1878 patent, as the defendants' device shows neither the inclined-sided recess, J, called for by the 1877 patent, nor the grooved gores, B, shown in the 1878 patent. Defendants rely on the issue of want of novelty, upon the English patent granted to William Stratford Hogg, April 1, 1872, for "improvements in rendering columns, girders, doors, shutters, and other parts of buildings fire-proof;" the invention being stated to consist "in casing and including such parts in fire-bricks, or other forms of clay or analogous fire-proof materials, moulded or formed to suit the particular objects to be inclosed." And in his specifications and drawings Hogg shows iron columns around which he places a casing of fire-bricks, the interstices between which fire-bricks are filled with plastic fire-clay or analogous material, so as to effectually exclude the heat from the iron. The proof shows that while the complainant's patents specifically describe gores of wood to be fitted in between the flanges or web of the iron column for the purpose of fire-proofing, the patent also states that other material may be used, and that, as a matter of fact, the fire-proofing done by the complainants under their patent is by filling the angles between the webs of the columns with fire-brick moulded of the proper shape to fill the angles; and the interstices between such fire-brick are filled with plastic clay or other cementing material. The defendants construct a fire-proof column consisting of a hollow iron shaft, embody-

ing substantially the form of what is known as the "Old Phœnix Column," with webs extending outwardly, so as to form angles between the ends of the webs and the sides of the column, and these angles between the webs of the defendants' column, like the complainant's, are filled in with fire-brick, and the interstices between the bricks, and also between the bricks and the iron, are filled with plastic fire-clay or other plastic material. Defendants also show their gores extending beyond the ends of the webs of the column, so as to form a small space between the gores, which space is filled up, like any other interstice or space between the bricks, with fire-clay. Hogg did not show a column with webs or flanges, but shows in his drawings a round column. He, however, states specifically that his device is applicable to columns or girders of any shape, and that the fire-brick or fire-proofing material may be moulded in such shape as to adapt it to the iron columns or girders to be protected; and it will be remembered that in complainant's 1874 patent it is stated that the columns to be protected need not be webbed or cruciform in shape. He says: "These fire-proof casings have a space between them and the columns, which, if free escape is provided, may contain air, or it may be preferably filled with some material being a non-conductor of heat." Again he says: "I lute the joints with some fire-clay or fire-proof cement or material, and stop any holes that may be necessary for fixing them." With these directions in the patent for adapting the shape of the fire-bricks to the shape of the column, there can be no doubt that Hogg would have been entitled under his patent, if he wished to fire-proof a web or flanged column, to fill in the space between the webs with fire-brick so as to make a gore; and he would also have been entitled to cover the ends of the web, either by projecting his brick over the ends, or by filling in the space between the extended sides of the brick gores and the web with fire-clay or fire-proof cement. In other words, Hogg having instructed the world that an iron column could be made approximately fire-proof by surrounding it with fire-clay so as to protect it from heat, and in the use of fire-brick with luting or filling the joints between the fire-bricks so as to exclude or hinder the access of the heat to the iron, there was no field for invention left for Drake and Wight on which they could claim a patent upon the idea of filling in the space between their wooden gores and the ends of the web with fire-clay, cement, or other fire-proof material, to protect the ends of the web from external heat; and hence it seems to me that all there is in complainant's patent of 1874 is fully anticipated by this Hogg patent.

The bill is, therefore, dismissed for want of equity.